## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **v.** | |
| **MEHDI NIKPARVAR-FARD,** <br> **also known as MEHDI ARMANI** | **NO.  17-513** |

**DuBois, J.**                                                               **December 6, 2017**

### M E M O R A N D U M

### I.      INTRODUCTION

Defendant was charged in an Indictment with one count of threatening a law enforcement officer with the intent to impede, intimidate, and interfere with the officer while he was engaged in the performance of his official duties, and with the intent to retaliate against the officer on account of the performance of his official duties, in violation of 18 U.S.C. § 115(a)(1)(B), and one count of making a false, fictitious, and fraudulent statement and representation in violation of 18 U.S.C. § 1001.

Presently before the Court is Defendant's Motion to Suppress Statements.  Defendant moves to suppress his alleged false statement and threats on the ground that the Deputy United States Marshals who arrested him did not inform him of his *Miranda* rights.  The Court conducted a Suppression Hearing on November 30, 2017.  For the reasons that follow, the Court denies defendant's Motion.

### II.     BACKGROUND

United States District Judge Cynthia M. Rufe issued a civil arrest warrant for defendant on August 28, 2017.  Comp. ¶ 5.  Carrying out the warrant, three Deputy United States Marshals

went to arrest defendant on August 29, 2017, at the Advanced Urgent Care ("AUC") facility at 5058 City Avenue, Philadelphia, Pennsylvania. Comp. ¶ 5.

Two of the Marshals — Thomas Gabriel and John Grandison — entered the AUC facility and recognized defendant. Comp. ¶ 7. The two Marshals went with defendant to defendant's private office. Suppression Hr'g Tr. 38:22–39:8, Nov. 30, 2017. After the Marshals showed defendant the warrant, which named Mehdi Nikparvar-Fard, defendant pointed to the warrant and said, "That's not me." Hr'g Tr. 40:2–12. Defendant thereafter produced a driver's license bearing the name "Mehdi Armani." Hr'g Tr. 41:19–24; Comp. ¶ 8. The Government charges that when defendant said, "That's not me," he made a false statement in violation of 18 U.S.C. § 1001.

Because the Marshals did not believe defendant's statement that he was not Mehdi Nikparvar-Fard, they handcuffed him and put him in their vehicle. Hr'g Tr. 42:15; Comp. ¶¶ 8–10. In the vehicle, defendant used profanities directed at the Marshals and made statements that the Government charges were threats in violation of 18 U.S.C. § 115(a)(1)(B). Comp. ¶ 11. Specifically, in the conversation with the Marshals, and without solicitation from the Marshals, defendant said, "[Y]our face will be with me all the time, ok, we will see each other, don't worry about that, we will see each other." Nikparvar-Fard Arrest Transcript 2 at 2[1]; Comp. ¶ 11. In response, Deputy United States Marshal Johannes Jarkowsky, who recorded the incident on his cell phone, asked defendant, "Is that a threat?" Nikparvar-Fard Arrest Transcript 2 at 2; Comp. ¶ 11. After some back and forth between Deputy Marshal Jarkowsky and defendant, defendant said, "[F]or somebody at my scale to come and threaten you. Is that what you think, if I want to do that, I pay a ni—er like this guy five grand to put a fucking bullet in your head if I wanta to do

---

[1] A copy of the transcript of defendant's arrest, which was provided to the Court with a letter dated November 29, 2017, from the Government, was made part of the record at the Suppression Hearing on November 30, 2017.

that." Nikparvar-Fard Arrest Transcript 2 at 3; Comp. ¶ 11.  According to Deputy Marshals Jarkowsky and Grandison, defendant gestured at Deputy Marshal Grandison, who is African American, when he said, "I pay a ni—er like this guy."  Comp. ¶ 12; Hr'g Tr. 47:3–4.

Defendant filed a Motion to Suppress Statements, arguing that the Court should suppress defendant's alleged false statement and alleged threats.  Legal arguments in support of this Motion were set forth in a separate filing, Defendant's Omnibus Response to Pending Legal Issues.  The Government filed Government's Response to Defendant's Motion to Suppress Statements.  This Motion was presented to the Court at a Suppression Hearing on November 30, 2017.  The Motion is thus ripe for review.

## III.    APPLICABLE LAW

A defendant in a custodial interrogation is entitled to the protections of the Fifth Amendment of the United States Constitution as the Supreme Court expounded in *Miranda v. Arizona*, 384 U.S. 436, 475 (1966).  The government can introduce incriminating statements made by a defendant during a custodial interrogation only if the defendant is warned of his constitutional rights to remain silent and to an attorney and the defendant knowingly and intelligently waives his rights.  *Id.*  A defendant is in custody when, given the circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave."  *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).  Furthermore, the person in custody must be subject to an interrogation, which occurs when the police use "words or actions that the police should have known were reasonably likely to elicit an incriminating response from him."  *Rhode Island v. Innis*, 446 U.S. 291, 303 (1980).

## IV.    DISCUSSION

### A.  The Fifth Amendment Does Not Protect Statements Which Are Crimes in and of Themselves.

The Government argues that the exclusionary rule, which precludes the admission of evidence collected in violation of a defendant's constitutional rights, does not apply when the statements themselves constitute charged criminal conduct.  Government's Resp. 2.  The Court agrees with the Government on this issue.

The United States Court of Appeals for the Third Circuit has not ruled on this issue, but several other Courts of Appeals have held that the exclusionary rule bars illegally obtained evidence of a crime, but does not bar statements that are crimes in and of themselves.  *United States v. Awadallah*, 349 F.3d 42, 81 (2d Cir. 2003) (holding that even if defendant's arrest and detention were unlawful, it would not follow that his alleged perjurious testimony before a grand jury was the fruit of that illegality); *United States v. Pryor*, 32 F.3d 1192, 1195 (7th Cir. 1994) ("[Defendant] did not divulge *evidence* of a some prior crime during his few minutes in the office; instead he *committed* a crime, which makes all the difference."); *United States v. Mitchell*, 812 F.2d 1250, 1253 (9th Cir. 1987) ("Illegally obtained evidence of a crime is subject to the exclusionary rule.  The rule does not, however, bar prosecution of the crime itself."), *abrogated on other grounds by Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058, 1066–70 (9th Cir. 2002); *United States v. King*, 724 F.2d 253, 256 (1st Cir. 1984) (admitting evidence that defendant shot pistol even though shot was fired during illegal search); *United States v. Bailey*, 691 F.2d 1009, 1016–17 (11th Cir. 1982) ("[I]f the defendant's response is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime."); *United States v. Kirk*, 528 F.2d 1057, 1062 (5th Cir. 1976) ("Thus, as

a general rule it can be said that no fifth amendment problem is presented when a statement is admitted into evidence which is not confessional in nature, but in and of itself constitutes the crime charged.")

If the exclusionary rule were applied to exclude evidence of new crimes, it would immunize all conduct committed by defendants after the police, in some way, violate a defendant's constitutional rights. As Judge Easterbrook wrote in *Pryor*, "[i]f the rule were applied rigorously, suspects could shoot the arresting officers without risk of prosecution." *Pryor*, 32 F.3d at 1195. The exclusionary rule surely was not intended to "virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." *Bailey*, 691 F.2d at 1017.

The Unites States Court of Appeals for the Fifth Circuit addressed the application of the exclusionary rule in cases similar to this case. In *Kirk*, the defendant was arrested for public intoxication, given his *Miranda* rights, and thereafter told the police he was going to kill the President. *Kirk*, 528 F.2d at 1059–60. The defendant was then interrogated at the police station by Secret Service Agents who did not repeat his *Miranda* rights. During this interrogation, the defendant repeated his threat to kill the President, and was indicted and convicted only for this second threat. *Id.* at 1060. The court affirmed the trial court's decision to admit the second threat despite the absence of *Miranda* warnings because the Fifth Amendment protects confessions of crimes already committed, not statements that are new crimes. *Id.* at 1061–62. Similarly, in this case, defendant's alleged false statement and his alleged threats were not confessions to a crime already committed. Rather, these statements were new crimes in and of themselves.

Defendant, during the Hearing on November 30, 2017, agreed that the exclusionary rule does not apply to new crimes, but argued that this limitation is only applicable in situations where the defendant has not committed a prior crime. Since defendant made the alleged false statement, later charged as a crime, before he made the alleged threat, defendant argues that the threat in this case is different from the statements in cases where several Courts of Appeals held the exclusionary rule did not apply. This argument fails for two reasons. First, in several of the cases cited by the Government and relied upon by the Court, the defendant had already committed a crime when the statement was made. *See, e.g.*, *Kirk*, 528 F.2d at 1059–60 (defendant already committed crime of public intoxication before threatening to kill the President). Second, no court has stated that that its decision not to apply the exclusionary rule to new crimes was limited to situations in which the defendant had not already committed a crime. *See, e.g.*, *Pryor*, 32 F.3d at 1195–96; *Mitchell*, 812 F.2d at 1252.

The Fifth Amendment does not protect defendant's statements because they were not confessions, but charged crimes in and of themselves. Thus, the Court denies Defendant's Motion to Suppress on this ground.

## B. Defendant Was Not Subject to an Interrogation When He Made the Alleged False Statement.

Notwithstanding the fact that defendant's Motion is denied on the ground that the exclusionary rule does not apply to statements that are crimes in and of themselves, the Court will address the question of whether defendant was in a custodial interrogation when he allegedly made a false statement and allegedly threatened the United States Marshals. The Government argues that defendant was not subject to a custodial interrogation when he allegedly made a false statement since he was not in custody and he was not being interrogated. Government's Resp.

5–7.  The Court finds that although defendant was in custody when he allegedly made the false statement, he was not being interrogated.

The Government contends that defendant was not in custody when he allegedly made the false statement charged in the Indictment since defendant was in his own office and the Marshals had not yet arrested defendant or put defendant in handcuffs.  Government's Resp. 6.  However, as Deputy Marshal Grandison testified, defendant was not free to leave when the Marshals approached him in his office.  Hr'g Tr. 49:22–50:20.  Based on that testimony, the Court finds that defendant was in custody when he allegedly made the false statement.

The Court also finds that, although in custody, defendant was not subject to an interrogation while in the AUC facility.  Deputy Marshal Grandison testified that the Marshals did not ask defendant any questions about his identification before defendant pointed to the warrant and said, "That's not me."  Hr'g Tr. 40:22–41:10.  Even if the Marshals did ask defendant for his name, such question would not be reasonably likely to elicit an incriminating response.  Holding otherwise would require law enforcement officers executing an arrest warrant to give the arrestee his *Miranda* warnings before confirming the arrestee's identity and carrying out the arrest.

### C. Defendant Was Not Subject to an Interrogation When He Made the Alleged Threats.

The Court also finds that defendant was not subject to a custodial interrogation when he allegedly threatened the Marshals.  The Government does not dispute that defendant was in custody when he allegedly threatened the Marshals, so the Court does not address that issue.  However, the Court finds that defendant was not being interrogated when the Marshals were driving him from the AUC facility to the Courthouse.

"*Miranda* concerns are not implicated in follow-up questions to volunteered statements."
*United States v. Rommy*, 506 F.3d 108, 133; *accord United States v. Koontz*, 143 F.3d 408, 411
(8th Cir. 1998) (holding that "statements made in response to a law enforcement officer's
attempt to seek clarification of a defendant's remarks, during an interview requested by the
defendant, are not the products of interrogation" (internal quotation marks omitted)); *United
States v. Gonzales*, 121 F.3d 928, 940 (5th Cir. 1997) (ruling that "when a suspect spontaneously
makes a statement, officers may request clarification" of ambiguities "without running afoul of
the Fifth Amendment"); *Andersen v. Thieret*, 903 F.2d 526, 532 (7th Cir. 1990) (rejecting
custodial interrogation challenge when, in response to suspect's volunteered statement, "I
stabbed her," police asked, "Who?"); *United States v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir.
1985) (holding that no interrogation occurred where, in response to suspect's volunteered
statement, "You can't take that," police inquired, "Why?" and suspect replied, "I can't run my
business without that"). *But see United States v. Crowder*, 62 F.3d 782, 785–86 (6th Cir. 1995)
(holding that police officer interrogated suspect when, after suspect stated that shotgun was "in
the wood," officer asked clarifying question about location).

The Court agrees with the various Courts of Appeals that have held that clarifying
questions in response to volunteered and unsolicited statements do not constitute an
interrogation. Defendant voluntarily and without solicitation told the Marshals, "[Y]our face will
be with me all the time, ok, we will see each other, don't worry about that, we will see each
other." Nikparvar-Fard Arrest Transcript 2 at 2; Comp. ¶ 11. Like the defendant in *United
States v. Calisto*, 838 F.2d 711, 717–18 (3d Cir. 1988), who, without provocation from the
police, blurted out an inculpatory statement that drugs found in his home were his, defendant in
this case voluntarily made the alleged threat cited above without provocation from the Marshals.

When Deputy Marshal Jarkowsky asked, "Is that a threat?", Nikparvar-Fard Arrest Transcript 2 at 2, he was merely asking a clarifying follow-up question, like the police in *Anderson* who, in response to the suspect's volunteered statement, "I stabbed her," asked, "Who?". *Anderson*, 903 F.2d at 532. Although the Marshal's question asking whether defendant just made a threat was arguably one which could elicit an incriminating response, this was true in *Anderson*, and the court in that case nevertheless allowed the statement because the police officer's clarifying question was not coercive.

## V.     CONCLUSION

Ultimately, the Marshals in this case were not engaged in the type of coercive police conduct with which the Supreme Court in *Miranda* was concerned. *See Berkemer v. McCarty*, 468 U.S. 420, 437 (1984) ("Fidelity to the doctrine announced in Miranda requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated."). The Court denies defendant's Motion on the grounds that the Fifth Amendment does not protect statements that are new crimes in and of themselves and that defendant was not subject to a custodial interrogation.