**IN THE UNITED STATES DISTRICT COURT  
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| MEHDI NIKPARVAR-FARD,<br>also known as MEHDI ARMANI | NO. 17-513 |

DuBois, J.                                                                     December 15, 2017

**M E M O R A N D U M**

## I. INTRODUCTION

Defendant is charged in an Indictment with one count of threatening a law enforcement officer with the intent to impede, intimidate, and interfere with the officer while he was engaged in the performance of his official duties, and with the intent to retaliate against the officer on account of the performance of his official duties, in violation of 18 U.S.C. § 115(a)(1)(B), and one count of making a false, fictitious, and fraudulent statement and representation in violation of 18 U.S.C. § 1001. Presently before the Court is Defendant's Motion for Pretrial Release/Bail.

On September 1, 2017, United States Magistrate Judge Thomas J. Reuter granted the Government's Motion for Temporary Detention. Thereafter, on September 8, 2017, United States Magistrate Judge Jacob P. Hart ordered that defendant be detained, finding that the Government proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of defendant as required, and the Government proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community. Defendant appealed Judge Hart's decision. Following a hearing on September 14, 2017, United States District Judge John R. Padova denied defendant's appeal.

This Court conducted an evidentiary hearing and heard oral argument on defendant's Motion on December 7, 2017. During this hearing, by agreement of the parties, transcripts of the earlier bail hearings and the evidence presented at each such hearing were made part of the record.

## II. APPLICABLE LAW

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, provides for pretrial detention when a defendant poses a risk of flight or a danger to the community. The Act provides that a judge should order pretrial detention when the judge finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the Court should consider the following factors: the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the history and characteristics of the defendant, including the defendant's character, physical and mental condition, employment, financial resources, length of residence in the community, community ties, criminal history, and records concerning appearance at court proceedings; and the nature and seriousness of the danger to any person or the community. 18 U.S.C. § 3142(g).

To meet its burden of persuasion, the government must prove by clear and convincing evidence that the defendant is a danger to the community, or by a preponderance of the evidence that he poses a risk of flight if released pending trial. *United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986).

### III. FINDINGS OF FACT

Having reviewed the submissions of the parties and the transcripts of the hearings before Magistrate Judges Reuter and Hart and District Judge Padova, and after conducting an evidentiary hearing on December 7, 2017, the Court makes the following findings of fact:

1. There is probable cause to believe defendant threatened a law enforcement officer with the intent to impede, intimidate, and interfere with the officer while he was engaged in the performance of his official duties, and with the intent to retaliate against the officer on account of the performance of his official duties.

2. There is probable cause to believe defendant knowingly and willfully made a false, fictitious, and fraudulent statement and representation.

3. United States District Judge Cynthia M. Rufe issued a civil arrest warrant for defendant on August 28, 2017. Carrying out the warrant, three Deputy United States Marshals went to the Advanced Urgent Care ("AUC") facility at 5058 City Avenue, Philadelphia, Pennsylvania, on August 29, 2017, to arrest defendant.

4. Two of the Marshals — Thomas Gabriel and John Grandison — entered the AUC facility and recognized defendant. The two Marshals went with defendant to defendant's private office. After the Marshals showed defendant the warrant, which named Mehdi Nikparvar-Fard, defendant pointed to the warrant and said, "That's not me." Defendant thereafter produced a driver's license bearing the name "Mehdi Armani."

5. While the Marshals were transporting defendant to the Courthouse in their vehicle, and after some heated conversation, defendant said to Deputy United States Marshal Johannes Jarkowsky, "[Y]our face will be with me all the time, ok, we will see each other, don't worry

about that, we will see each other." In response, Deputy United States Marshal Johannes Jarkowsky, who recorded the incident on his cell phone, asked defendant, "Is that a threat?" After some back and forth between Deputy Marshal Jarkowsky and defendant, defendant said, "[F]or somebody at my scale to come and threaten you. Is that what you think, if I want to do that, I pay a ni—er like this guy five grand to put a fucking bullet in your head if I wanta to do that." Defendant gestured at Deputy Marshal Grandison, who is African American, when he said, "I pay a ni—er like this guy."

6. The Internal Revenue Service ("IRS") publically filed a tax lien in April, 2017, against defendant in the amount of $2,780,430. The tax lien is outstanding.

7. Defendant, his wife, and the Fairview Trust, also known as the Nikparvar Family Trust, are currently named defendants in the United States Bankruptcy Court for the Eastern District of Pennsylvania. In this bankruptcy proceeding, the trustee of Incare, LLC, alleged that defendant withdrew funds from Incare in the amount of $857,280 in excess of his reported Incare income during the period from 2008 to 2010.

8. In the bankruptcy proceeding, in June 2013, defendant reported owing a total of $629,000 to four different creditors.

9. Since June 2013, defendant incurred additional debts from judgments in civil matters. These judgments, arising out of four different civil actions, amount to a total of $740,347.

10. Defendant has, in various civil matters, failed to appear in court or respond to civil allegations. The Court notes the following cases in which defendant failed to appear or respond and/or was held in contempt of court:

    a. Misc. 17-11: United States District Judge Cynthia M. Rufe twice found the defendant in civil contempt for failing to comply with the Department of Labor's

request for documents.

b. 16-cv-111: United States District Judge Edward G. Smith entered an Order granting default judgment against defendant, noting that defendant failed to appear despite notice.

c. Docket No. 1980 in 2016 March Term of Philadelphia Court of Common Pleas: Plaintiff filed a praecipe to enter default judgment because the defendant failed to answer or otherwise respond to the complaint. The court awarded the plaintiff $292,514 in this matter.

d. 14-cv-6347: This Court issued a Memorandum and Order detailing defendant's failure to comply with the Court's directives to hire an attorney and respond to plaintiff's allegations. The Court entered default judgment of $107,904.

e. CCP No. 1674 of 2012: Defendant and his wife were held in contempt of court in a civil matter in which they were sued by Federal Realty Investment Trust in the Court of Common Pleas in Pennsylvania's 26th Judicial District. On August 26, 2013, Judge Thomas A. James Jr. issued a bench warrant for the arrest of defendant and his wife for their "willful and wanton and contemptuous disregard of this Court's Orders dated June 16, 2013 and August 2nd, 2013." This judgment was transferred from Columbia County, Pennsylvania, to Montgomery County, Pennsylvania. The case was then reported settled.

11. This Court, by Order dated December 7, 2017, directed that defendant provide the Court with a report covering the status of all judgments against him, and his other debts and obligations, by December 11, 2017. Donald Moser, counsel for defendant, reported to the Court by letter dated December 11, 2017, that defendant would need more time to provide the Court

with the requested information on defendant's debts because a representative of Philadelphia Abstract, a title company, told Mr. Moser it would take up to two weeks to verify the information requested regarding defendant. The Court notes that its December 7, 2017, Order directed defendant to provide a report covering the status of his judgments; it did not require a judgment search by a title company.

12. Defendant, a medical doctor, owns and operates six urgent care clinics. Defendant recently changed the name of these clinics from Advanced Urgent Care to Elite Medical and Rehabilitation.

13. During the conversation in which the Government charges defendant threatened the Marshals, defendant stated he has a "two million dollar income." Defendant and his wife own five properties in Georgetown County, South Carolina, valued collectively at $3,450,000.

14. Defendant, along with his wife and two children, are beneficiaries of the Fairview Trust, also known as the Nikparvar Family Trust. Defendant and his wife created the trust and serve as co-trustees. The trust owns defendant's family home in Penn Valley, Pennsylvania, and a medical/dental center in Upper Moreland Township, Pennsylvania.

15. Defendant and his wife were both born in Iran. They are now lawful United States citizens, and their two children were born in the United States. According to a report submitted by defendant and written by Dr. Thomas F. Haworth, a licensed psychologist who evaluated defendant's wife and children, defendant has no other family in the United States.[1]

16. Defendant has no prior criminal convictions.

17. During the September 14, 2017, hearing before Judge Padova, Dr. Elliot Atkins, a

---

[1] The opinions in Dr. Haworth's report, dated October 17, 2017, about how defendant's absence is affecting his wife and children are not relevant to this ruling.

licensed psychologist, testified that he began evaluating defendant the morning of the hearing, but was not able to form any conclusions regarding defendant's mental state because he had not completed his evaluation.

18. Defendant submitted two reports from Dr. Atkins, respectively dated October 9, 2017, and November 21, 2017. In his October 9, 2017, report, Dr. Atkins diagnosed defendant with Mixed Personality Disorder with Obsessive-Compulsive, Avoidant, and Narcissistic features. Dr. Atkins opined that, within a reasonable degree of psychological certainty, defendant's threatening statements were a function of his previously undiagnosed and untreated personality disorder. Furthermore, Dr. Atkins concluded that defendant did not intend to act on his threats and defendant is not a danger to himself or the community.

19. As part of his proposed conditions of pretrial release, after the hearing on December 7, 2017, defendant agreed to sign a $1 million surety bond, consisting of a $100,000 cash payment. In his Motion for Pretrial Release/Bail, defendant proposed posting as security a residential property, worth approximately $350,000, which is owned by two of defendant's close friends.

20. Defendant also proposed posting as security his family home worth approximately $1,175,000. The Court notes, however, that defendant's home is owned by the Fairview Trust, also known as the Nikparvar Family Trust. Section III of the Indenture of Trust states, "Until actual distribution, no part of the income or principal shall be subject to anticipation or alienation by any beneficiary, and the same shall be free of the obligations of any beneficiary and may not be attached or taken because of any such obligations." As a result of this section of the Indenture of Trust, Judge Padova, during the September 14, 2017, hearing, concluded "that there's a serious legal question of the ability of the trustee to pledge that trust for an obligation of any of its beneficiaries."

7

## IV.   CONCLUSIONS OF LAW

The Court concludes that the Government has met its burden of showing that defendant poses a risk of flight if released pending trial by a preponderance of the evidence. Defendant's prior judicial history demonstrates a repeated failure to comply with court orders. More specifically, in various proceedings, defendant has failed to respond to complaints, failed to appear in court, or failed to produce documents, and multiple courts have entered default judgments against defendant or found defendant in contempt of court. Furthermore, given the weight of the evidence against defendant, the IRS tax lien, defendant's significant debts, and defendant's family ties to Iran, defendant has ample reason to flee the jurisdiction, and the financial resources to do so.[2]

The Court also concludes that the Government has not met its burden of showing that defendant poses a danger to the community by clear and convincing evidence. Defendant has no prior criminal history. The Indictment in this case charged defendant with two nonviolent crimes. Furthermore, the Court gives weight to the report of Dr. Atkins, who evaluated defendant and opined that defendant's threats were a function of his previously undiagnosed and untreated personality disorder. Dr. Atkins concluded that defendant did not intend to carry out the threats and does not pose a danger to the community.

## V.   CONCLUSION

For the reasons stated above, defendant's Motion for Pretrial Release/Bail is denied with respect to the risk of flight issue and granted with respect to the danger to the community issue. An appropriate order follows.

---

[2] The Court notes that its ruling on risk of flight does not depend on the status of defendant's debts. Even if defendant has paid some or all of his debts, the debts are still significant with respect to this ruling since most were incurred as a result of a failure to comply with court orders and remained unpaid for a substantial period of time.