## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| MEHDI NIKPARVAR-FARD, also known as MEHDI ARMANI | NO. 17-513 |

**DuBois, J.**                                                                              **December 28, 2017**

## M E M O R A N D U M

### I.      INTRODUCTION

Defendant is charged in an Indictment with one count of threatening a federal law enforcement officer with the intent to impede, intimidate, and interfere with the officer while he was engaged in the performance of his official duties, and with the intent to retaliate against the officer on account of the performance of his official duties, in violation of 18 U.S.C. § 115(a)(1)(B) (Count One), and one count of making a false, fictitious, and fraudulent statement and representation in violation of 18 U.S.C. § 1001 (Count Two).

Presently before the Court is defendant's Motion to Dismiss Count One of the Indictment on the ground that the Deputy United States Marshals involved in the case are not federal law enforcement officers under 18 U.S.C. § 115. On December 27, 2017, the Court conducted a Final Pretrial Conference, at which it heard oral argument on the Motion. For the reasons stated on the record at that conference, and amplified in this Memorandum, the Court denies defendant's Motion to Dismiss Count One of the Indictment.

### II.     BACKGROUND

The facts of this case are set forth in the Court's December 6, 2017, Memorandum denying Defendant's Motion to Suppress Statements and the Court's December 15, 2017,

Memorandum denying in part and granting in part Defendant's Motion for Pretrial Release/Bail. In the interest of brevity, the Court includes in this Memorandum only a brief recitation of the facts.

United States District Judge Cynthia M. Rufe issued a civil arrest warrant for defendant on August 28, 2017. Comp. ¶ 5. Carrying out the warrant, three Deputy United States Marshals went to the Advanced Urgent Care ("AUC") facility at 5058 City Avenue, Philadelphia, Pennsylvania, on August 29, 2017, to arrest defendant. Comp. ¶ 5. The threat and the false statement at issue in the case allegedly were made in the course of the arrest.

On November 29, 2017, defendant filed the Motion to Dismiss Count One of the Indictment, arguing that the Marshals are not federal law enforcement officers covered by the criminal statute on which that count is based. The Government filed a Response to Defendant's Motion to Dismiss Count One on December 6, 2017. Pursuant to the Order, dated December 7, 2017, directing the parties to file supplemental briefing on the Motion, defendant filed Defendant's Memorandum of Law in Support of Motion to Dismiss Count I and the Government filed a Supplemental Response to Defendant's Motion to Dismiss Count One. The Court held oral argument on the Motion in conjunction with a Final Pretrial Conference on December 27, 2017. The Motion is thus ripe for review.

## III.    APPLICABLE LAW

"In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). "A ruling on a motion to dismiss is not, however, 'a permissible vehicle for addressing the sufficiency of the government's evidence.'" *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660–61

(3d Cir. 2000)). "'Evidentiary questions'—such as credibility determinations and the weighing of proof—'should not be determined at th[is] stage.'" *Id.* (quoting *United States v. Gallagher*, 602 F.2d 1139, 1142 (3d Cir. 1979).

## IV. DISCUSSION

### A. 18 U.S.C. § 115 criminalizes threats against federal law enforcement officers authorized to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law provided they are engaged in official duties — acting within the scope of employment — at the time of the charged offense.

This case raises the issue of interpreting two provisions of 18 U.S.C. § 115. The Court begins with the text of the statute. § 115(a)(1)(B), the subsection under which defendant is charged, states:

> [Whoever] threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

§ 115(c)(1) defines federal law enforcement officer as "any officer, agent, or employee of the United States authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law."

In the Motion to Dismiss, defendant argues that the Court should dismiss Count One, which charges defendant with threatening a federal law enforcement officer, because the Deputy United States Marshals are not federal law enforcement officers as defined in 18 U.S.C. § 115. Specifically, defendant argues that the Marshals are not "federal law enforcement officers" under 18 U.S.C. § 115(c)(1) because, at the time of the charged threat, the Marshals were not engaged in the "prevention, detection, investigation, or prosecution of any violation of Federal criminal

law" — they were engaged in the execution of Judge Rufe's arrest warrant for defendant's civil contempt.

In response, the Government argues that the Marshals only need to be *authorized* to "engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law." According to the Government, the Marshals need not be engaged in any of these activities at the time of the charged threat. The Government contends that the only requirement under § 115 regarding the federal law enforcement officers' conduct at the time of the charged threat is that the officers be "engaged in the performance of official duties" under §115(a)(1)(B).

The Court agrees with the Government on this issue. Although there does not appear to be any caselaw on the question presented, the Court reaches its conclusion through a literal reading of the text of the statute. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). The Court concludes that § 115(c)(1) only requires that a federal law enforcement officer be *authorized* to "engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law." Under a plain reading of the statute, federal law enforcement officers need not be engaged in any of these activities at the time of the charged threat in order to be covered by the statute; they need only be engaged in the performance of official duties.

This reading of § 115(c)(1), which defines a federal law enforcement officer, is supported by § 115 (a)(1)(B), which states the conduct under which defendant is charged. Subsection

4

(a)(1)(B) prohibits threatening a federal law enforcement officer "with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties or with intent to retaliate against such . . . law enforcement officer on account of the performance of official duties."  As the Government argues, subsection (a)(1)(B), and not subsection (c)(1), specifies the conduct in which the federal law enforcement officer must be engaged at the time the threat is made.  The federal law enforcement officer is only required to be "engaged in the performance of official duties."

Although there does not appear to caselaw interpreting "the performance of official duties" language in § 115, courts have interpreted a nearly identical phrase in 18 U.S.C. § 111, which prohibits physically attacking officers or employees of the United States "while in engaged in or on account of the performance of official duties."  Several United States Courts of Appeals have held that to be engaged in the performance of official duties under § 111, the agent must "'simply [be] acting within the scope of what the agent is employed to do.  The test is whether the agent is acting within that compass or is engaging in a personal frolic of [his] own.'" *United States v. Hoffer*, 869 F.2d 123, 126 (2d Cir. 1989) (quoting *United States v.* Heliczer, 373 F.2d 241, 245 (2d Cir. 1967), *cert. denied*, 388 U.S. 917 (1967)).  *Accord United States v. Street*, 66 F.3d 969, 978 (8th Cir. 1995); *United States v. Clemons*, 32 F.3d 1504, 1507 (11th Cir. 1994); *United States v. Kelley*, 850 F.2d 212, 214 (5th Cir. 1988), *cert. denied*, 488 U.S. 911 (1988); *United States v. Streich*, 759 F.2d 579, 584 (7th Cir. 1985), *cert. denied*, 474 U.S. 860 (1985); *United States v. Young*, 614 F.2d 243, 244 (10th Cir. 1980).  The Court concludes that, in light of the nearly identical language in § 115 and § 111, the phrase "in the performance of official duties" in § 115 is defined as "acting within the scope of what the agent is employed to do."

**B. Deputy United States Marshals are authorized to engage in or supervise the "prevention, detection, investigation, or prosecution of any violation of Federal criminal law."**

The Court concludes that Deputy United States Marshals are federal law enforcement officers as defined in § 115(c)(1). 28 U.S.C. § 566(d), which lists the power and duties of United States Marshals, states:

> Each United States marshal, deputy marshal, and any other official of the Service as may be designated by the Director may carry firearms and make arrests without warrant for any offense against the United States committed in his or her presence, or for any felony cognizable under the laws of the United States if he or she has reasonable grounds to believe that the person to be arrested has committed or is committing such felony.

The statute also authorizes United States Marshals to "investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General." 28 U.S.C. § 566(e)(1)(B). It is clear from this statute that Deputy United States Marshals are authorized "to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law" under § 115(c)(1).

**C. Defendant's proposed interpretation of the statute runs afoul of the canon against surplusage.**

The Court adopts the Government's proposed interpretation of the statute because the Government's reading gives effect to every clause and defendant's reading renders as surplusage part of the statute. Although the canon against surplusage is not absolute, the canon is strongest where the desired interpretation gives effect to every clause and word of the statute, and the competing interpretation would render superfluous another part of the same statutory scheme. *Marx v. General Revenue Corp.*, 568 U.S. 371, 385–86 (2013). Under defendant's proposed interpretation of the statute, the phrase "while engaged in the performance of official duties" in

subsection (a)(1)(B) is surplusage.  In contrast, the Government's reading of the statute gives effect to each clause.

If a federal law enforcement officer is engaged in or supervising the "prevention, detection, investigation, or prosecution of any violation of Federal criminal law," it necessarily follows that he is also acting within the scope of what he is employed to do.  Therefore, defendant's proposed interpretation of subsection (c)(1) would render as surplusage the requirement in subsection (a)(1)(B) that the federal law enforcement officer be engaged in "the performance of official duties."  The Government's proposed interpretation of the statute avoids this problem of surplusage.  Under the Government's reading of the statute, subsection (c)(1) defines which federal law enforcement officers are covered, whereas subsection (a)(1)(B) sets forth what the federal law enforcement officers must be doing at the time of the charged threat in order to be covered.  Under this reading of the statute, if a Marshal is threatened, for instance, while shopping for groceries, he would be authorized by law "to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law," but not engaged in the performance of official duties.  The Government's reading gives effect to the phrase "while engaged in the performance of official duties," but defendant's interpretation reads out this phrase.

**D. Defendant's proposed interpretation of the statute would lead to an absurd result.**

Under defendant's proposed interpretation of the statute, a federal Marshal who is threatened in the course of arresting a suspect for a violation of Federal criminal law would be covered by § 115(a)(1)(B).  However, if, as in this case, the very same Marshal were threatened in the course of executing a civil arrest warrant, the Marshal would not be covered by the statute. It is difficult to believe that, in drafting this statute, Congress intended to protect a Marshal

executing a criminal arrest warrant, but did not intend to protect the very same Marshal executing a civil arrest warrant.

**E.  The Court declines to follow the rule of lenity.**

Defendant asserts that the Court should adopt its reading of the statute because of "the canon of strict construction of criminal statutes."  Def.'s Mem. Supp. Mot. 2.  Defendant appears to be referring to the rule of lenity, a longstanding canon of construction that traces its roots to *United States v. Wiltberger*, 18 U.S. 76 (1820).  "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."  *United States v. Santos*, 553 U.S. 507, 514 (2008).  However, the rule of lenity only applies in cases in which there is an ambiguity in a criminal statute.  The Court concludes that there is no ambiguity in the statute.

**V.     CONCLUSION**

The Court concludes that, as a matter of law, the Deputy United States Marshals are federal law enforcement officers under the statute.  The Court denies defendant's Motion to Dismiss on the ground that §115(c)(1) only requires that, in order to be covered under the statute, a federal law enforcement officer must be authorized to engage in the listed activities — the prevention, detection, investigation, or prosecution of a violation of Federal criminal law.  The statute covers such officers as long as they are engaged in the performance of official duties, which is defined as "acting within the scope of what the agent is employed to do," at the time of a threat.